**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| **GREAT BAY CONDOMINIUM OWNERS** | ) | |
| **ASSOCIATION, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:23-cv-0026** |
| v. | ) | |
| | ) | |
| **FIRST AMERICAN TRUST, FSB, as trustee of** | ) | |
| **Land Trust No. 1082-0300-00 (a.k.a. MVC** | ) | |
| **Trust) and MVC TRUST OWNERS** | ) | |
| **ASSOCIATION, INC.,** | ) | |
| **Defendants.** | ) | |

**ATTORNEYS:**

DAVID WENTZEL, ESQ.
WENTZEL LAW OFFICES
CHICAGO, ILLINOIS

W. MARK WILCZYNSKI, ESQ.
JUSTIN T. CROOKER, ESQ.
LAW OFFICE OF W. MARK WILCZYNSKI
ST. THOMAS, U.S. VIRGIN ISLANDS
    FOR PLAINTIFF

EARNESTA L. TAYLOR, ESQ.
CARL A. BECKSTEDT, III, ESQ.
BECKSTEDT & KUCZYNSKI
CHRISTIANSTED, U.S. VIRGIN ISLANDS
    FOR DEFENDANTS

**MEMORANDUM OPINION**

**MOLLOY, Chief Judge.**

 **BEFORE THE COURT** is Defendants First American Trust, FSB ("FAT"), as trustee of Land Trust No. 1082-0300-00 (a.k.a "MVC Trust") and MVC Trust Owners Association, Inc.'s ("MVC TOA") motion to dismiss the complaint, filed on August 30, 2023. (ECF No. 22.) Plaintiff Great Bay Condominium Owners Association, Inc. ("GBCOA") filed an opposition on

October 17, 2023. (ECF No. 34.) Defendants, thereafter, filed a reply on October 31, 2023. (ECF No. 35.) For the following reasons, the Court will grant the motion.

## I. ALLEGATIONS IN THE COMPLAINT

GBCOA asserts it is a non-profit Virgin Islands corporation and the governing condominium association for unit owners at Great Bay Condominium, a/k/a the Ritz-Carlton Club, located in St. Thomas, U.S. Virgin Islands (the "Condominium"). FAT is a trustee of Land trust No. 1082-0300-00 under certain MVC Trust Agreement dated March 11, 2010, with power and authority to protect, conserve, sell, lease, encumber, or otherwise manage and dispose of the timeshare estates and condominium units listed and described in Exhibit A to the complaint. MVC TOA is a Florida not for profit corporation and administrator of the MVC Trust and a party to the March 11, 2010 Agreement. MVC TOA administers the timeshare estates and condominium units listed and described in Exhibit A to the complaint.

In 2002, the owner of the Ritz-Carlton Hotel in St. Thomas, RC Hotels (Virgin Islands), Inc. ("Ritz-Carlton"), executed and recorded a Declaration Establishing a Plan for Condominium Ownership ("Declaration"). The phased plan of development contemplated four buildings, A through D, containing approximately eighty residential condominium units ("Residences"). Only building A, containing twenty-three Residences was constructed when the Declaration was recorded, and the other three buildings were planned for future development phases. Contemporaneously with the recording of the Declaration, Ritz-Carlton recorded a Supplementary Declaration of Condominium for the Club at Great Bay Condominium ("Supplementary Declaration"), which created the timeshare estates that characterize the Ritz-Carlton Club by dividing each of the twenty-three Residences in Building A into twelve timeshare estates ("Residence Interests"). Each Residence Interest entitles its owner ("Member") to exclusive use of the Residence for twenty-one days of reserved allocation, subject to the reservation procedures. Both the Declaration and Supplementary Declaration provide that GBCOA operates the Condominium and is responsible for the maintenance, repair and replacement of the common elements and the collection of assessments against each Member for the common expenses. Both the Declaration and Supplementary Declaration authorize GBCOA to contract for the

management and operation of the Condominium and to delegate its powers and duties to such contractors, except those specifically required by the Condominium documents or applicable law to be exercised by the board of directors or GBCOA members. The Declaration calculates the percentage ownership allocation of the twenty-three Residences in Building A, while the Supplementary Declaration calculates the percentage ownership allocation of the 276 Residence Interests in Building A. The same scheme was followed with respect Buildings B through D.

In 2005, Ritz-Carlton decided to submit Buildings G and H to the Condominium, each containing two-bedroom suites that Ritz-Carlton was using for hotel guests desiring "Club Level" accommodations, which included complimentary food and beverage services in a dedicated "Lounge" occupying the fifth floor of Building G. In or around September 28, 2005, Ritz-Carlton formed a corporation, The Neighborhood Association, Inc. ("NA"), for the purpose of administering the Lounge for the exclusive benefit of the future owners of the timeshare estates to be created in Buildings H and G, and to assess and collect the expenses relating to ownership and operation of the Lounge, which Ritz-Carlton intended to lease, license or convey to NA.

Ritz-Carlton first submitted Building H to the Condominium, which was designated as Phase 5 and accomplished through the recording of the Fourth Amendment to Declaration, on December 9, 2005. In anticipation of submitting Building G to the Condominium as Phase 6, together with the Lounge which Ritz-Carlton intended to designate as a "Commercial Unit," the Fourth Amendment to Declaration established rules relating to Commercial Units generally. These rules are set out in Paragraph 5 of the Fourth Amendment to Declaration and provide that "[e]ach Commercial Unit and its Owner shall be further subject to any particular covenants, conditions and restrictions that may be imposed thereon in connection with the creation and conveyance of such Commercial Unit." Paragraph 6 of the Fourth Amendment to Declaration provides:

> All Owners of Residences that are designated as a Two Bedroom Suite in Phase 5 or Phase 6 shall, in addition to being Members of the Condominium Association, be mandatory members of the Neighborhood Association whose contemplated sole initial purpose shall be to own and operate Commercial Unit CU-1, anticipated to be created in Phase 6, and which may provide certain

*Great Bay Condominium Owners Association, Inc. v. First American Trust, FSB, et al.*
Case No. 3:23-cv-00026
Memorandum Opinion
Page **4** of **11**

> food and beverage services for the exclusive benefit of the occupants from
> time to time of the Two Bedroom Suites ... More particularly, and in accordance
> with the separate organizational and governing documents of the
> Neighborhood Association, its members shall control the Neighborhood
> Association and be responsible for all costs and expenses related to the
> ownership, maintenance and operation of the Commercial Unit owned by it,
> including but not limited to any services that it may elect to provide.

Contemporaneously, Ritz-Carlton also recorded the Third Amendment to Supplementary
Declaration, which divided each of the Residences in Building H into twelve Residence
Interests.

Thereafter, Ritz-Carlton submitted Building G to the Condominium, containing twelve
Residences and it created and submitted Commercial Unit "CU-1" to the Condominium. This
was accomplished through the recording of the Fifth Amendment to Declaration, on July 18,
2006. Paragraph 5 of the Fifth Amendment to Declaration provides:

> All Owners of Residences that are designated as a Two Bedroom Suite shall, in
> addition to being Members of the Condominium Association, be mandatory
> members of the Neighborhood Association whose sole purpose is to own and
> operate Commercial Unit CU-1, which shall be conveyed by Declarant to the
> Neighborhood Association and utilized for the exclusive benefit of the
> occupants from time to time of the Two Bedroom Suites, whether or not such
> occupants are Members of the Neighborhood Association, and as more
> particularly described in the organizational and governing documents of the
> Neighborhood Association. As a member of the Neighborhood Association,
> Owners of Two Bedroom Suites are responsible for all costs and expenses of
> the ownership and operation of Commercial Unit CU-1, including but not
> limited to any services that it may elect
> to provide.

Contemporaneously, Ritz-Carlton recorded the Fourth Amendment to Supplementary
Declaration, containing Paragraph 5 which provides:

> The twelve (12) Residences which are the subject of this amendment are Two
> Bedroom Suites and, as such, all Owners of Residence Interests therein shall
> in addition to being members of the Condominium Association, be mandatory
> members of the Neighborhood Association, whose contemplated sole purpose
> shall be to own and operate Commercial Unit CU-1, and which may provide
> certain services for the exclusive benefit of the occupants from time to time of
> the Two Bedroom Suites, whether or not such occupants are Members of the
> Neighborhood Association. More particularly, and in accordance with the
> separate organizational and governing documents of the Neighborhood

Association, its members shall control the Neighborhood Association and be responsible for all costs and expenses related to the ownership and operation of the Commercial Unit CU-1, including but not limited to any services that it may elect to provide.

CU-1's percentage ownership of the undivided interest in the common area and facilities of Great Bay Condominium is 1.415112%. Section 20(a) of the Declaration provides that all provisions of the Declaration as amended from time to time are "enforceable equitable servitudes and shall run with the land and shall be effective until the Condominium is terminated."

From July 18, 2006, when Ritz-Carlton submitted Building G and Commercial Unit CU-1 to the Condominium, through December 20, 2008, Ritz-Carlton held title to CU-1 in fee simple absolute. Throughout this period, the Owners of the Residence Interests in Buildings H and G paid all costs and expenses of ownership and operation of CU-1, including CU-1's share of the annual maintenance expenses of the Condominium. On December 20, 2008, Ritz-Carlton executed a Condominium Deed conveying CU-1 in fee simple absolute to NA. From 2009 through 2016, the Owners of the Residence Interests in Buildings G and H continued to pay all costs and expenses of ownership and operation of CU-1, including CU-1's share of the annual maintenance expenses of the Condominium. Through certain acquisition and other transactions, MVC Trust now owns approximately forty six percent (46%) of the Residence Interests in Buildings G and H at the Condominium.

In 2016, GBCOA and NA were negotiating a potential agreement for the transfer of CU-1, pursuant to which GBCOA would agree to assume financial responsibility for CU-1 and designate it as a common area for use by all members of GBCOA. The parties did not agree on terms and no agreement was ever signed. On or around September 20, NA, through its officer and director Salvatore Cutrona, executed a Condominium Deed purporting to convey CU-1 to GBCOA unilaterally and without GBCOA's consent. GBCOA rejected the conveyance. After NA purported to convey the deed to CU-1 to GBCOA without its consent, NA stopped assessing its members for CU-1's share of the annual maintenance expenses of the Condominium.

In December 2018, GBCOA filed suit against NA in the Superior Court of the Virgin Islands to cancel the Condominium Deed and to quiet title to CU-1. The Superior Court action

is assigned Civil No. ST-18-CV-768. By October 2021, the Owners of the Residence Interests in the Two Bedroom Suites owed approximately $1.2 million for CU-1's statutory share of the Condominium's maintenance fees for the period 2017 to 2021. GBCOA issued invoices to those Owners for the unpaid maintenance fees. On November 12, 2021, the Superior Court granted NA's *ex parte* "Motion for Temporary Restraining Order and Preliminary Injunction" seeking to prohibit GBCOA from collecting the unpaid CU-1 maintenance fees from the Owners of the Residence Interests in the Two Bedroom Suites. On April 11, 2022, the Superior Court issued a preliminary injunction order denying GBCOA's motion to vacate the temporary restraining order and prohibiting GBCOA from "disbursing invoices upon Neighborhood Association members for any assessment fees regarding Commercial Unit-1 . . . until final judgment of this matter." GBCOA's interlocutory appeal from the Superior Court's preliminary injunction order remains pending. GBCOA's November 30, 2022 motion to strike certain claims for injunctive and declaratory relief and GBCO's motion to join Marriott Vacation Clun Trust as a necessary party were denied. In this action, GBCOA seeks a judicial declaration as follows:

(i)    That the Declaration and Supplementary Declaration governing the Condominium, as both have been amended from time to time, create two servitudes relating to CU-1: (i) a restrictive covenant limiting CU-1's exclusive use to occupants of the Two Bedroom Suites; and (ii) an affirmative covenant obligating the owners of Residence Interests in the Two Bedroom Suites to pay all costs and expenses of ownership and operation of CU-1, including CU-1's share of the common annual maintenance expenses of the Condominium; and

(ii)    that the aforesaid servitudes were not extinguished by NA's purported transfer of CU-1 to GBCOA, regardless of whether or not the transfer was valid, but rather remain appurtenant to the timeshare estates and condominium units owned by Defendants in Buildings H and G of the Condominium.

## II. LEGAL STANDAD

On a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, all well-pleaded allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020). Under the Rule 12(b)(6) standard, courts must determine whether the complaint contains sufficient "facts to state a

claim to relief that is plausible on its face." *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020) (internal quotations and citation omitted).

### III. DISCUSSION

Defendants argue that no diversity jurisdiction exists because there is no amount in controversy and there is no justiciable controversy, res judicata and collateral estoppel doctrines preclude the action and, if the action is not dismissed, each owner of the timeshare estates in Buildings G and H must be added as necessary parties. Plaintiff argues: (1) Defendants' argument at its core is based on the *Brillhart-Wilton* abstention and relies on extrinsic evidence that is contrary to the well-pleaded allegations and must be excluded from consideration under Rule 12(b)(6); (2) the claim for declaratory judgment is ripe for determination because its resolution will conclusively determine the rights of the parties concerning whether the Declarations create servitudes relating to CU-1 appurtenant to the Residence Interests owed by Defendants such that they would not be extinguished by a conveyance of title to CU-1; (3) the Defendants' res judicata argument fails as a matter of law because there is no final judgment in the Superior Court action; and (4) if the Court converts the motion into one for summary judgment, it should deny it.

### Abstention

The Declaratory Judgment Act ("DJA") provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Granting a declaratory judgment is . . . discretionary and a court may abstain from entertaining an action seeking only declaratory relief." *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 281 (3d Cir. 2017). When exercising their DJA discretion, courts consider whether the questions in controversy between the parties to the federal suit can better be settled in the pending state court proceeding. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146 n.21 (3d Cir. 2014). Thus, courts "should first determine whether there is a 'parallel state proceeding,'" *Kelly*, 868 F.3d at 282, which means that "[t]he proceedings must involve substantially similar parties and claims at the time the federal court is deciding whether to

abstain. *Id.* at 285. Once that determination is made, courts should weigh other non-exhaustive factors to the extent they are relevant:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;
> (4) the availability and relative convenience of other remedies;
> (5) a general policy of restraint when the same issues are pending in a state court;
> (6) avoidance of duplicative litigation;
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*[.]

*Id.* at 283 (quoting *Reifer*, 751 F.3d at 146).

The Plaintiff's argument that Defendants' motion relies on extrinsic materials to show that the Superior Court action is a parallel proceeding is unpersuasive because the Superior Court action Civil No. ST-18-CV-768 is incorporated in the complaint through specific allegations referencing it, (ECF No. 1 ¶¶ 39-41, 47-60), as well as the attachment of a filing in that action (ECF No. 1-22, Ex. 11). *See Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'") (citations omitted). Thus, the Court will consider the materials on which Defendants rely in support of their motion because they are not matters outside the pleadings.

GBCOA's Superior Court action pending against NA is an action for declaratory judgment to cancel deed and to quiet title, and it remains pending. However, the November 12, 2021 Order for Temporary Restraining Order in that action indicates that GBCOA's "action to determine ownership of CU-1 is pending and undecided, so that ownership of that unit, and responsibility for any valid common charges or dues therefore, which would be the responsibility of the Owner of CU-1, has not yet been determined by this Court." (ECF No. 22-3 at 3-4). Although Defendants in this action are not defendants in the Superior Court's action, as GBCOA's motion to join them in the Superior Court action was denied, (ECF No. 22-2), the Superior Court found that they are NA's member with 49% interest as a corporate

single suit owner. (*Id.* at 3.) In this action, GBCOA seeks a declaration that Defendants have "the obligation to pay their proportionate share of all costs and expenses relating to ownership and operation of CU-1, regardless of whether GBCOA or another entity owns title to CU-1." (ECF No. 1 ¶ 7.) But who owns CU-1 and who has the obligation to pay costs and expenses related to ownership and operation of CU-1 are precisely the issues that the Superior Court indicated remain pending for the Superior Court's determination. The Court finds that there is a pending state court proceeding that involves substantially similar parties and claims, and the pending Superior Court action favors abstention in this circumstance. *Reifer*, 751 F.3d at 144-45 ("The existence of pending parallel state proceedings militates significantly in favor of declining jurisdiction, although it alone does not require doing so.").

As to the other non-exhaustive factors, it appears unlikely that a federal court declaration will resolve the uncertainty of obligation to pay the common charges associated with CU-1 because that issue cannot be determined in a vacuum and depends on the interpretation of the numerous legal instruments alleged in the complaint, including the ownership of CU-1 and the interplay of various legal relationships amongst the stakeholders, all of which appears to be subject to the pending Superior Court action, as indicated by the Superior Court. Although GBCOA contends that the issue in this action is different and separate from the issue in the Superior Court action, the Court is not convinced that is the case, especially in light of the Superior Court's own discussion of the issues before it in its November 12, 2021 and June 23, 2023 orders. (*See* ECF Nos. 22-2 and 22-3); *Crum & Forster Specialty Ins. Co. v. Strong Contractors, Inc.*, 488 F. Supp. 3d 192, 199 (E.D. Pa. 2020) (finding that, "if it were permitted to proceed in federal court, this matter would likely reach a conclusion that overlaps with issues currently pending in state court"). Thus, this factor favors abstention.

Moreover, the convenience of the parties does not appear to be affected in this circumstance since the federal court and the Superior Court are located next to one another, making this a neutral factor. *Id.* at 200 (finding the convenience of the parties factor neutral since "both the federal and state forums should be equally convenient for the parties because

this Court is located just blocks from the Philadelphia County Court of Common Pleas, the state court where Tyler filed the underlying actions").

With regards to the public interest, the instant action involves interpretation of various legal instruments governing real property based on the Virgin Islands law. Although the public has a general interest in settlement of the real estate disputes, there does not appear to be any specific public interest in the instant case. *See Allstate Ins. Co. v. Moyer,* No. 3:14CV1992, 2015 WL 1164780, at *3 (M.D. Pa. Mar. 13, 2015) (finding that the public interest factor weighs in favor of abstention because, "while the public has great interest in the law governing such contracts in general, no pressing public interest in this particular dispute exists"); *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000), *as amended* (Jan. 30, 2001) (finding that "to receive declarations in federal court on matters of purely state law has no special call on the federal forum"). The Court finds that this factor favors abstention.

Notwithstanding the denial of the GBCOA's motion to join FAT and MVC TOA in the Superior Court action for purposes of NA's motion for injunctive relief, there is no evidence that no remedy remains available in the pending Superior Court action involving CU-1, the same subject matter as this action, or that no appeal is available from any of the Superior Court's orders. The Court finds that the availability and relative convenience of other remedies factor favors abstention because remedies remain available while the Superior Court action is pending, and that action is older and more advanced than this action. *See Zurich Am. Ins. Co. v. MJF Trucking, LLC*, No. 5:22-CV-01194-JMG, 2022 WL 2953691, at *4 (E.D. Pa. July 25, 2022) (finding that other remedies are available to plaintiff, "such as declaratory judgment obtained from state court").

The Court's concern about the propriety of and the motivation for the instant action, filed on June 26, 2023, only three days after the Superior Court's June 23, 2023 denial of GBCOA's motion to add FAT and MVC TOA as parties for purposes of NA's motion for injunctive relief, (ECF No. 1 ¶ 60), is particularly animated by the Superior Court's findings in its November 12, 2021 Order for Temporary Restraining Order:

> Great Bay has initiated an unlawful and improper campaign to assess the individual members of NA, with years of retroactive dues assessments,

> purporting to rely upon a dubious interpretation of the governing condominium documents that require owners of residential units to pay such charges for this separate commercial unit, even as Great Bay has present before this Court the undecided claims in its suit seeking a declaration that it is not the owner of the commercial unit in question, despite having title of record thereto in the records of the Office of the Recorder of Deeds. In pursuit of its evasion of the authority of the Court to decide that claim, Great Bay has suddenly issued invoices to the individual members of NA who own separate interests in condominiums at the property, with a demand that they pay these disputed and apparently unlawful claims by November 22, 2021, or face eviction or lockout from their residences This imminent threat of self-help by the Plaintiff constitutes a sufficient showing of irreparable harm to NA and its members, warranting issuance of this temporary restraining order, to preserve the status quo and protect NA and its owners from the threatened discriminatory and presumptive illegal actions now being taken.

(ECF No. 22-3 at 4.) The Court finds that the three factors, namely, a general policy of restraint when the same issues are pending in the Superior Court, avoidance of duplicative litigation, and prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*, are relevant and carry great weight favoring abstention in the circumstances of this case. *Consol. Rail Corp. v. Fondiaria SAI, S.p.A.*, No. CV 11-5416, 2013 WL 12155803, at *2 (E.D. Pa. Nov. 8, 2013) ("the possibility of interfering in the state court case regarding the same issue is substantial").

### IV. CONCLUSION

For the foregoing reasons, the Court finds that abstention is warranted in this action. An appropriate Order follows.

**Dated:** March 28, 2024                    */s/ Robert A. Molloy*
                                             **ROBERT A. MOLLOY**
                                             **Chief Judge**